UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 12-137-JBC**

**NANCY McQUARRIE,**                                                                                    **PLAINTIFF,**

**V.**             **MEMORANDUM OPINION AND ORDER**

**PNC BANK, N.A.,**                                                                                    **DEFENDANT.**

\* \* \* \* \* \* \* \* \*

This matter is before the court on PNC Bank's motion to dismiss (R. 15). Nancy McQuarrie's claims arise out of PNC's alleged actions in breaching her safety deposit box in violation of the contract between the parties and then failing to return the contents of the box to McQuarrie. Because most of the counts in McQuarrie's amended complaint state a plausible claim for relief, the court will grant the motion in part and deny it in part, and will dismiss only McQuarrie's claims of fraud and outrage.

The court accepts the following facts, submitted by McQuarrie in her amended complaint, as true for purposes of this motion. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). McQuarrie held a safety deposit box at the Fayette Mall branch of PNC Bank in Lexington. On or about June 6, 2011, PNC drilled into and breached McQuarrie's box without her permission and, as a result, the contents of the box were misplaced and/or stolen. Around the same time, PNC contacted McQuarrie to tell her of its intention to breach the box; however, at the time of that call, the box had already been

breached. McQuarrie commenced an action in Fayette Circuit Court, alleging violations of the Kentucky Consumer Protection Act, negligence, breach of contract, outrage, conversion, and fraud, and asserting a right to punitive damages. PNC removed the action to this court based on diversity of the parties and filed the present motion to dismiss, in which it seeks dismissal of all of McQuarrie's claims except her breach-of-contract claim. PNC primarily argues that McQuarrie's tort claims are subsumed by her contract claim; however, as this is not the case, the court will dismiss only those counts as to which McQuarrie has failed to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, the court will dismiss McQuarrie's fraud and outrage claims and will allow her other claims to proceed on their merits.

Although the parties have submitted evidence on this motion, the court will address it as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The court will consider the lease agreement between the parties, submitted by PNC with its motion, in the context of the motion to dismiss without converting it into a motion for summary judgment because the agreement is "central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999). Though the particular document is not expressly mentioned in the amended complaint, McQuarrie asserts breach-of-contract claims, and the lease agreement provides the basis for and the bounds of the relationship between the parties. It is accordingly properly considered part of the pleadings. *Id*. Further, in order to prevent the conversion of this motion into a motion for summary judgment, the court expressly

2

rejects for the purposes of this motion the additional exhibits proffered by McQuarrie in her response. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006).

Though a contract does form the basis for the relationship between the parties, McQuarrie's claims are not barred by the economic loss rule because it does not apply under these circumstances. In Kentucky, the economic loss rule provides that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 738 (2011). Economic damages that directly result from the loss of personal property, such as repair or replacement costs or lost profits, are thus unrecoverable in tort, but must be recovered through an action on the contract between the parties. *Id*. Conversely, "losses for injuries to people and to other property, in these commercial transactions, remain subject to the traditional products liability theories." *Id*. The *Giddings & Lewis* court addressed, but did not determine, whether this doctrine extends into cases regarding consumer products rather than just commercial products. *See id.* at 737 n. 5. This case, however, involves no product that generated an economic loss; the contract at issue for the safety deposit box characterizes the arrangement between the parties as a lease of property, *see* R. 15-3 at 1, and such a lease is not contemplated under the economic loss rule. The existence of a contract, by itself, does not preclude a plaintiff from bringing an action in tort for damages related to a violation of that

contract. *See Lewis v. Ceralvo Holdings, LLC*, No. 4:11-cv-00055-JHM, 2012 WL 32607 at *3 (W.D. Ky. Jan. 6 2012). Accordingly, McQuarrie's tort claims are not subsumed by her contract claim, and must therefore be analyzed individually.

First, McQuarrie's negligence claim is not barred by the bailment clause in the lease. As stated above, the lease characterizes the relationship between the parties as one of a lease of property, and explicitly denies the creation of the bailment relationship that has historically been applied to purchasers and providers of safety deposit boxes. *See, e.g.*, *James v. Webb*, 827 S.W.2d 702, 704 (Ky. Ct. App. 1991). Paragraph 4 of the lease provides that "[l]essor shall under no circumstances be considered a bailee, or otherwise howsoever in control or possession of the contents of the leased box, except as provided in Paragraph 11 hereof." R. 15-3 at 1. For a bailment relationship to exist, goods must be entrusted and delivered from one party to another and accepted by the receiving party, s*ee Adika v. Smith,* 466 F.3d 503, 507 (6th Cir. 2006); the instant lease explicitly denies such acceptance in this case. McQuarrie's negligence claim does assert that PNC had a duty to her as a bailee, and PNC is correct that the lease bars it from having any duties as a bailee of the property in the box. However, upon breaching McQuarrie's box and taking possession of the contents therein, PNC assumed a duty of care that is expressly stated by Paragraph 10 of the lease: "[t]he liability of the Lessor in respect to property deposited in the box is limited to loss caused by neglect to exercise ordinary care and diligence to prevent the opening of the box by any person other than the Lessee . . . ." R. 15-3 at 1. Under

the terms of the lease, therefore, PNC may be liable for the failure to exercise ordinary care under these circumstances. As the complaint states a plausible claim for relief on this issue, the court will not dismiss McQuarrie's negligence claim.

Second, the Kentucky Consumer Protection Act, KY. REV. STAT. 367.170 ("KCPA"), applies to this case because of the nature of the contractual arrangement between the parties. The lease at issue characterizes the arrangement between the parties as a lease of property, and Kentucky has applied the KCPA to similar property leases in landlord-tenant cases. For instance, in *Miles v. Shauntee*, 664 S.W.2d 512 (Ky. 1983), the court ruled on tenants' claims against a landlord under the KCPA, and while the court found that the acts in that case did not rise to the level of being "unfair, false, misleading or deceptive," and thus denied relief, it did not question whether the KCPA should apply to an ongoing property lease arrangement, and instead applied the statute without engaging in such analysis. *See id*. at 519. This application is consistent with other rulings providing that the KCPA "has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts," *Morton v. Bank of the Bluegrass*, 18 S.W.3d 353, 360 (Ky. Ct. App. 1999), and is not inconsistent with the KCPA's inapplicability to "single real estate transactions," such as a contract to purchase a home from a builder. *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. Ct. App. 2000). Accordingly, construing the complaint in the light most favorable to McQuarrie, *see Bredesen*, 500 F.3d at 527, McQuarrie states a plausible claim for relief under the KCRA, and the court will not dismiss that claim.

5

Third, McQuarrie has stated a plausible claim for conversion. The amended complaint alleges the required elements for conversion: McQuarrie had ownership rights in the items PNC removed from her safety deposit box; PNC wrongfully took possession of these items; and McQuarrie suffered harm because PNC is unable to produce those items. *See Anderson v. Pine South Capital, LLC.*, 177 F.Supp.2d 591, 603 (W.D. Ky. 2001); *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 (2005). This claim alleges independent wrongful conduct that occurred after the alleged breach of contract, in that it is concerned with the loss of the items PNC removed from the box, not with PNC's breach of the box in violation of the contract. *See First Constr., LLC v. Gravelroad Ent., LLC*, No. 6:07-155-DCR, 2008 WL 2038878, *5 (E.D. Ky. May 12, 2008). As this count states a plausible claim, the court will not dismiss it.

During discovery, McQuarrie may find evidence that would entitle a jury to award punitive damages under her independent tort claims, as such damages are available in some cases involving breach of contract where there is an independent tort. *See Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 486 (Ky. Ct. App. 1978). Though there is no separate cause of action for punitive damages as it is pled in the amended complaint, the court will not bar the recovery of such damages at this stage in the litigation.

McQuarrie has multiple viable tort claims against PNC; however, the court will grant PNC's motion to dismiss her fraud and outrage claims. First, the court will dismiss the fraud claims because McQuarrie has not pled any specific injury

6

she suffered as a result of her reliance on PNC's alleged misrepresentations, nor is any such injury readily apparent from her response to PNC's motion. To sustain an action for fraud, McQuarrie is required to "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). One of those required elements is the injury resulting from the fraud. *See Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). While she may have acted in reliance upon statements made by PNC that her safety deposit box had not yet been breached, *see Wilson v. Henry*, 340 S.W.2d 449, 451 (Ky. 1960), there is no apparent injury stemming from this alleged misrepresentation other than McQuarrie's surprise upon arriving at PNC and learning that the box had already been breached. Any injuries that may arise from the breach of the box may arise in negligence, breach of contract, conversion, or under the KCPA; they do not arise as a direct result of misrepresentations made by PNC.

Second, McQuarrie's claim for outrage will be dismissed because the tort of outrage is intended only as a "gap-filler" where the tortfeasor's actions are not addressed under traditional common law tort actions. *See Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001). As damages for McQuarrie's mental distress may be available under her other tort claims, she cannot also maintain a separate claim for outrage. *Id*. Because they do not state plausible claims for relief, the court will thus dismiss McQuarrie's fraud and outrage claims.

Accordingly,

7

**IT IS ORDERED** that PNC's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. McQuarrie's claims for fraud and outrage, Counts IV and VI of her amended complaint, are dismissed with prejudice; however, the court will not dismiss the remaining claims.

Signed on September 7, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY